TEXAS EXPRESS. Co. *v.* TEXAS & PACIFIC RY. Co.

TEXAS EXPRESS Co. *v.* INTERNATIONAL & GREAT NORTHERN R. Co.

*(Circuit Court, N. D. Texas. March 22, 1881.)*

**1. RAILROADS—EXPRESS COMPANIES—DISCRIMINATION—CONTRACT.**

A contract to furnish daily such an excessive and unnecessary amount of space, in the cars of a railroad company, for the transportation of the express matter of any one person or corporation, as will disable such railroad from serving others equally entitled to be served in the same manner, is illegal and void.

**2. SAME—SAME—SAME—SAME.**

Such a contract must be so framed as to adjust the rate of compensation to the number of persons and quantity (and perhaps quality) of matter transported, and to the length of the haul, and so as not to discriminate in favor of one or more companies or persons doing an express business against another or others engaged in a similar business.

**3. REASONABLE MAXIMUM RATES — EXPRESS MATTER — TEX. REV. ST. ARTS. 4256, 4257.**

Articles 4256 and 4257 of the Texas Revised Statutes, " establishing reasonable maximum rates of charges for the transportation of passengers and freight on railroads," provide, *inter alia,* as follows:

"Art. 4256. No railroad company shall demand or receive for transporting a passenger over its line of road exceeding five cents for each mile or fraction of a mile it may transport such passenger." * * *

"Art. 4257. Railroad companies may charge and receive not exceed-

ing the rate of 50 cents per hundred pounds per hurdred miles for the transportation of freight over their roads, but the charges for transportation on each class or kind of freight shall be uniform, and no unjust discriminations in the rates or charges for the transportation of any freights shall be made against any person or place, on any railroad in this state: ✻ ✻ ✻ *provided,* that when the distance from the place of shipment to the point of destination of any freight is 50 miles or less, a charge not exceeding 30 cents per hundred pounds may be made for the transportation thereof."

*Held,* that these statutory provisions were not intended to fix the reasonable maximum rates of charges for the transportation of the messengers and freight of express companies.—[Ed.

In Equity.

*F. E. Whitfield* and *White & Plowman,* for the express company.

*J. A. Baker* and *Welborn, Leake & Henry,* for the railroads.

McCormick, D. J. The complainant in these bills, after setting out its corporate existence, citizenship, and powers, and the customary and well-known usages of its business, and the nature of the trade done by express companies and by the complainant company, and also setting out the corporate existence, citizenship, powers, and duties of the defendant corporations, shows in substance that the complainant has for a number of years past, and up to the presentation of its bill, been doing business on the lines of the defendants' railroads under contracts made and modified from time to time by the respective parties, and that recently both defendant corporations have given the complainant such notices (set out in the bill) as indicate a determination on the part of said defendants to terminate the contracts upon which complainant has been and is doing business on said lines; and plaintiff avers that in giving said notices said defendants had in view to lay a foundation for the ejection of complainant's express business from said railways, claiming and intending to assert the right in defendants to do the express business thereon themselves, or, excluding all other express companies, make an exclusive contract with one only.

Complainant shows the extent and irreparable injury that would result to it from such action as the defendants' conduct is averred to threaten, and prays in substance and with

ample detail that the defendants may be decreed to permit the continuance of complainant's business on the lines of defendants' roads without molestation or hinderance, and on such reasonable terms as do not exceed the rates prescribed by the laws of Texas, and do not exceed the rates upon which other express matter is transported by the defendants, and upon the same trains upon which other express matter is transported; praying, also, that the defendants, their agents, officers, and servants be perpetually enjoined from refusing the complainant the facilities now enjoyed by the complainant in the conduct of its business on defendants' roads, and from excluding any of its express matter or messengers from defendants' depots, trains, and cars, and from refusing to receive and transport, as the defendants are now doing, the express matter and messengers of the plaintiff, and from demanding from plaintiff, as a condition of shipment, the inspection of the contents of its packages, and from demanding from plaintiff a higher rate upon packed parcels, safes, and chests than upon other freights of like weight or bulk, or charging for the transportation of its express matter otherwise than upon the weight thereof, or from otherwise charging a proportionally higher rate upon small than upon large packages, or from discriminating against plaintiff, (in particulars exhaustively stated,) or in any manner disturbing the business of plaintiff in its relations to defendants, so long as plaintiff shall pay therefor a reasonable compensation, not exceeding the rates prescribed in articles 4256 and 4257 of the Revised Statutes of the state of Texas.

Plaintiff also prays for a discovery, from the officers of the roads named and made defendants in the bills, by which the terms and conditions of any contract with the Pacific Express Company, or with any other company or persons, if any such exist, by and between said defendants and said Pacific Express Company, or other person 'or company, for the transportation of express matter. Plaintiff also prays for a provisional or preliminary injunction, to remain in force pending this suit, etc.

On the first of March, 1881, I made an order in each case

directing the defendants, after service, to show cause before me at Dallas, on the sixteenth of March, why the provisional injunction asked should not issue; and that, in the meantime, the plaintiff should not be interrupted or discriminated against in its said business on the lines of said defendants' roads.

The issues being largely issues of law, and hardly affected appreciably by the slight differences in certain particulars of fact, both cases have been heard as one, neither of the defendants putting in an answer, as such, but submitting affidavits by the officers of the respective defendant railroads in the form of an answer, the officers of whom discovery was asked making full discovery as asked. The plaintiff has also submitted affidavits of C. T. Campbell, superintendent of plaintiff's business in Texas, in support of plaintiff's bill.

From the defendants' affidavits it appears that the defendants disclaim all right to eject the plaintiff from the lines of their respective roads, and deny entertaining any intention to discriminate against plaintiff. They exhibit fully contracts lately entered into by said roads respectively with the Pacific Express Company, and each of defendants' railroad companies testifies to its willingness to extend the same facilities and terms to the plaintiff, or any other express company, that their contract with the said Pacific Express Company engages them to extend to it.

From the contracts exhibited it appears that the International & Great Northern Railroad has engaged with the Pacific Express Company "to furnish said Pacific Express Company space in its baggage or express cars, to be hauled on passenger trains between Longview and San Antonio, for 4,500 pounds of through freight, each way, each day that a train is run; and between Palestine and Houston for 2,500 pounds of through freight, each way, each day that a train is run; and for one agent or messenger, who shall have charge of the express matter, and a safe for money and valuable packages,—for which the Pacific Express Company engages to pay $150 for each and every day that a passenger train is run, and one-half first-class passenger fare for its

agents or messengers. The Pacific Express Company engages to pay for any excess of weight one and one-half of the local first-class freight rates between the points carried, as per the freight tariff of said railroad in use at the time; and, in case of any deficiency in the through freight on any day, the Pacific Express Company is allowed to add enough way freight, figured at one and one-half the local (railroad) freight rates, to make up the deficiency."

The Texas & Pacific Railway Company, in its contract with the Pacific Express Company, permits said Pacific Express Company to do a general express business over all the lines of said Texas & Pacific Railway Company's road, as now completed, or as may hereafter be built, owned, or controlled; and, besides other things not necessary to mention, agrees to furnish said Pacific Express Company sufficient space in its baggage or express cars, on all passenger trains, for the transportation of goods, merchandise, safes, and messengers of said Pacific Express Company; and the Pacific Express Company agrees to pay one-half first-class passenger fare for the transportation of the messengers and the messengers' safes, and the following rates for the transportation of merchandise, packages, and other express matter; namely, for distances under 15 miles, 30 cents per cwt.; graduating rates for the different distances up to over 450 and less than 500 miles, which last are charged at $1.90 per cwt.; "it being understood and agreed that the payments for such transportation of merchandise, exclusive of messengers' fare, are to be not less than $150 per day, without regard to the amount transported, for each and every day a passenger train is run for the lines as now completed,—the *fixed* amount to be paid as the lines of said railway companies are extended, to be agreed upon from time to time by the parties to this agreement."

It clearly appears from defendants' affidavits, as presented and discussed by defendants' counsel, that, by being willing and offering to furnish plaintiff and other express companies the same facilities on equal terms with the Pacific Express Company, said defendants' railroads embrace, in the terms they thus profess to offer, the payment, by any express com-

pany doing business on any portion of their respective lines, of the *fixed* daily sum of at least $150 for each day a passenger train is run, and one-half first-class passenger fare for the whole length of their respective lines, each way, (or one full first-class passenger fare for the whole length of their respective lines,) each day a passenger train is run for said company's messenger, without regard to the amount of the express matter said express company may wish hauled, or the length of the line over which said express company may desire to carry on its business. The lines of each of defendants' roads, now open to business, measure, in the aggregate, respectively, about 600 miles. First-class passenger fare is limited in this state, and is now charged at the rate of five cents per mile. These contracts, therefore, when analyzed, mean the same thing, in the controlling point: that the Pacific Express Company shall pay each of the defendant railroad companies at least $180 each day that a passenger train is run; and the equality of facilities and terms offered to all other persons or companies doing an express business *is* that you can use all or any portions of our lines for the transportation of your express matter, provided that you, and each of you, pay us $180 a day, without regard to the weight, bulk, or quality of the matter we haul for you, or the length of the haul.

It is not at all difficult to comprehend that this is a species of equality that cannot fail to prove satisfactory to the minds of the management of these railroads, and that the degree of such satisfaction will be materially heightened by every addition to the number of persons or express companies doing an express business that accept and share these equal terms.

This contract with the Pacific Express Company by the Texas & Pacific Railroad Company appears to be the first fruits of "an avowed policy of his co-defendant (I quote the language of the vice-president of the company) for some months past, as soon as it could be done, to encourage competition in the carrying of express matter, so that the wants of the people could be met at cheaper rates than those which have heretofore prevailed."

That this species of equality would probably be so attractive to persons or companies doing an express business as to arouse their activity in competing for express business to be done on these lines, is not so apparent to my mind, and the ability, experience, and gravity of the very learned and skilful counsel appearing for the defendants were not equal to the presentation of that view of the case. It was, therefore, contended, as it has been contended in cases presented to other judges during the past year, (with which the courts and the legal profession have become somewhat familiar,) that the certainty of having dispatch was a necessary element of the express business; that this could only be secured by having always a sufficiency of room; that as each express company would want all the business if it could get it, and as one might succeed in getting it all, that to insure always having room, each had to contract for all the room its business on any one day might need, and hence had to contract for room equal to something more than the average daily haul of such matter, and that the express business, and not the railroad company, should bear the burden of the dead hauls necessary to secure at all times this ample supply of room. And further, as to these cases, it was urged that the plaintiff, by its bill, showed that it was in possession of the express business on these lines; that it had an established reputation; that it had the good will of such business on those routes, with trained messengers and other servants known to the public and trusted by the public along said routes, with all the appliances for doing all of said business as it had done for many years; and that, this being so, whatever other express companies might suffer by any supposed inequality in such terms, the plaintiff could not complain; that if the Pacific Express Company—a stranger, with no present run of business, and none of these elements conducive to procuring and transacting such business—could afford to make such a contract, surely the plaintiff could very much better afford it; that if there was any inequality it would manifestly work most strongly in favor of that express company which already was in possession of the trade.

It is not questioned that dispatch is one of the vital elements in the express business, and I do not question that for the convenience of both parties an express company may contract with a railroad company for such room daily, on passenger or other fast trains, as the railroad can furnish, without thereby excluding or discriminating against any other company or person doing an express business. This question of daily room for any one express company is, however, a subject of concern chiefly to the express company; the railroad company being only charged in its duty, as an exclusive carrier on a public highway, to study and ascertain the current volume of express business offering, and likely to offer, and provide adequate and reasonable accommodation for that business by whatever other agency or agencies, company, or person, one or more, such express business is done, and solicits transportation; and it is by no means clear to my mind that the furnishing of one company any reasonable amount of room for adequate compensation would disable or embarrass the railroad company, so as to prevent the railroad from providing adequate transportation for other parties equally entitled to have their matter transported; or, if such be the case, and it is conceded, as I believe it is in the arguments and affidavits in this case, that the defendants are bound to transport on equal terms for all persons or companies doing an express business, then I have no doubt that such a contract for daily room to any one person as disables the railroad from serving others equally entitled to be served, is as to all such other persons or companies illegal and void.

It appears from the affidavit of plaintiff's superintendent, C. T. Campbell, that the volume of the express business actually done over the lines of the International & Great Northern Railroad last year (a year, he says, of unexampled activity in this as in all other trade) did not exceed an average daily haul of 1,985 pounds, and with said roads, as extended, the business of the current year will not be more than 10 per cent. greater in weight of express matter to be transported on said lines than it was last year. To one not an expert in all the niceties of railroad management it would more readily

appear that, to contract with competing express companies that each should have each day room sufficient to carry nearly double the average daily haul, for all parties, over the road of express matter, if the contract on the part of the railroad was actually so carried out as to sequester from the use of all others the room engaged to each, might soon and seriously trench upon the other interests and duties of the railroad. Nor does the suggestion that the plaintiff is in possession of the express business, and therefore in no situation to complain, strike me with force in the direction intended. On the contrary, in my judgment the admitted facts in reference to the plaintiff's present relations to the express business, along the lines of defendants' roads, tend rather to challenge criticism of the proposition, that, by these contracts with the Pacific Express Company, these railroads are pursuing a policy to encourage competition in the carriage of express matter, so that the wants of the public can be met at cheaper rates than those which have heretofore prevailed.

Not denying or questioning the right of the railroad to contract with any express company for adequate room daily for such an amount of express matter as it actually has from day to day, so long as such contract does not disable such railroad from granting equal daily facilities to any other express company soliciting the same accommodations on the same terms, and so long as all of such contracts shall not disable such roads from furnishing adequate accommodations, in their due turn, to other companies or persons doing an express business and soliciting transportation for express matter, I am clearly of opinion that said railroad companies, when they do so contract, must so frame their contracts as to adjust the rate of compensation to the number of persons and quantity (and perhaps quality) of matter transported, and to the length of haul, and so as not to discriminate in favor of one or more companies or persons doing an express business against another or others engaged in a similar business.

As to the amount or rate of compensation, the plaintiff contends that such rates cannot exceed five cents per mile for the transportation of its messengers, and 50 cents per hun-

dred pounds per hundred miles for transportation of its express matter, and relies upon articles 4256 and 4257 of the Texas Revised Statutes to support this contention.   This proposition of the plaintiff, considered in connection with the plaintiff's undisputed claim to have express matter hauled on passenger and other fast trains, and in the manner customary in hauling such matter, was denounced by the vice-president of the Texas & Pacific Railway Company, in his oral argument, as a proposition "too impudent" and "too bald" to be entertained by any court, or to permit the offering upon it of any argument to any court. His counsel, however, did argue this proposition elaborately, candidly, and with much force.

The provisions of the statutes upon which the plaintiff relies are the following:

Art. 4256. "No railroad company shall demand or receive for transporting a passenger over its line of road exceeding five cents for each mile or fraction of a mile it may transport such passenger.   *   *   *

Art. 4257. "Railroad companies may charge and receive not exceeding the rate of 50 cents per hundred pounds per hundred miles for the transportation of freight over their roads, but the charges for transportation on each class or kind of freight shall be uniform, and no unjust discriminations in the rates or charges for the transportation of any freights shall be made against any person or place, on any railroad in this state:   *   *   *   *  *provided*, that when the distance from the place of shipment to the point of destination of any freights is 50 miles or less, a charge not exceeding 30 cents per hundred pounds may be made for the transportation thereof."

The correct construction of these provisions, and how far they effect the issue between these parties, is not free from difficulty.   There is no literal exception in the statutes taking express matter out of its general terms used to embrace all commodities hauled by railroads.   The only exception made in the statutes in direct and explicit terms is in reference to the mails of the United States, which are to be carried on such

trains as the proper authorities of the post-office department may require, and for such compensation as may be agreed on between the parties; or, in case they cannot agree, then at rates fixed by certain commissioners, at not less, when carried on passenger trains, than the rate for transporting an equal weight of matter on ordinary merchandise trains, with provisions for compensation for car, extra speed, etc. Article 4235.

The legislature had full and minute knowledge of the existence and extent and manner of conducting the express business of the country, and was mindful to impose on every person, firm, or association of persons doing an express business in this state an annual tax of $750. Article 4665. The legislature, at least equally with the courts, had knowledge that express matter was carried in a particular manner on passenger and other fast trains, and not received, receipted for, or taken charge of by any of the servants of the railroad corporations. The legislature had knowledge also that this business, as to the compensation to the railroads therefor, had ever been and continued to be regulated by special contracts between the railroad companies and the express companies. Express matter is nowhere in any way specially mentioned in the statute. It is not provided that such matter shall be carried on other trains than ordinary merchandise trains.

It is, perhaps, true that the terms of the statute do necessarily include all matter received by the railroads and transported in the care of its servants, without regard to the quality of the matter or the train upon which it is carried. A railroad company could not, perhaps, receive a hundred pounds of fresh oysters in the shell at Galveston, and haul the same to Dallas, and (because its servants called it "express freight," and consented to haul it in a baggage car attached to a passenger train) charge more than 50 cents per hundred miles for the haul.

Upon a careful consideration of all the provisions of the Texas statutes bearing upon the subject, the inclination of my mind is to the opinion that it was not the intention of

the legislature, in the legislation already had upon the subject of "establishing reasonable maximum rates of charges for the transportation of passengers and freight on railroads," to provide such maximum rates for the character of carriage claimed by the plaintiff. I therefore hold that there is no Texas statute reaching and governing the subject of these rates. If it is practicable to define express matter with reasonable certainty, and to fix by law maximum rates for its carriage, it is most clearly not within the province of the judicial department of the government to do this. When and how far it may become necessary or expedient to do so must be left to the legislature to determine and declare; and until the legislature does so provide, the parties hereto, and all others similarly circumstanced, must be remitted to their right and power to contract in reference to the compensation for such service, subject to the limitations placed upon defendants by their duties as exclusive public carriers on public highways, that their terms for carrying shall be reasonable, and such as involve no unjust discrimination; to be determined in each particular case by the agreement of the parties in interest, and in case of their failing to agree, to be determined by the proper court on full statement and proof of the particular case.

In these cases a provisional injunction will be granted restraining the defendants as prayed in the bills, except as to the rate of compensation, and limiting that to such compensation as the parties may agree upon as being reasonable and not unjustly discriminating; or, in case of their failure to agree, requiring the parties to make such further application to the court as they may be advised is necessary, to enable the court to fix what is and shall be reasonable compensation in reference to the particular matters about which they are so unable to agree.